FILED

OCT 15 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT |
| Plaintiff, | ) | |
| v. | ) | 1:26 CR 00475 |
| | ) | CASE NO. |
| DARLENE K. TOMAN, | ) | Title 18, United States Code, Sections1028A(a)(1), 1343, 1344 |
| Defendants. | ) | JUDGE RUIZ |

GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

Defendant and the Victims

1. Defendant DARLENE K. TOMAN resided in Painesville, Ohio, in the Northern District of Ohio, Eastern Division.

2. Firm 1 was a law firm located in Beachwood, Ohio, in the Northern District of Ohio, Eastern Division. Firm 1 was a fiduciary for disabled veterans' bank accounts into which both Veteran's Administration disability compensation benefits and Social Security Administration benefits payments were deposited.

3. Victim 1 was the owner of Firm 1. Victim 1 had signatory authority on the disabled veteran's accounts. Any checks Firm 1 issued from the disabled veteran's accounts were required to have Victim's 1's signature.

4. Victims 2 through 12 (collectively, the "Veteran Victims") were either disabled veterans, beneficiaries of disabled veterans, or disabled Social Security benefits recipients who had Firm 1 listed as a fiduciary on their bank accounts. Firm 1 would receive the Veteran

Victims' Veteran's Administration disability compensation benefits and Social Security benefits into accounts jointly controlled by Firm 1 and the Veteran Victim. Firm 1 would then make payments on behalf of the Veteran Victims for necessities, such a housing, transportation, and insurance payments, among other expenditures for the benefit of the Veteran Victims.

5. The disabled veterans for whom Firm 1 served as fiduciary, including the Veteran Victims, were receiving Veteran's Administration disability compensation benefits, and sometimes also Social Security benefits, because they had suffered service-connected injuries while serving in the U.S. Armed Forces. For example, one of the Veterans Victims had served in the U.S. Marine Corps and had become disabled because he was shot in the head by an enemy sniper in Iraq. This Veteran Victim was the recipient of multiple military honors, including the Purple Heart, Navy and Marine Corps Achievement Medal, Combat Action Ribbon, and National Defense Service Medal.

6. The Veteran Victims needed Firm 1 to serve as a fiduciary on their bank accounts to ensure their living expenses would be paid because their service-connected disability prevented or hindered them from managing their finances independently. For example, the Veteran Victims had a range of disabilities, including schizophrenia, traumatic brain injury, epilepsy, heart failure, deep vein thrombosis, amputations, and bipolar disorder. Some of the Veteran Victims required around-the-clock care and could not manage their finances at all.

7. The Veteran's Administration appoints fiduciaries, such as Firm 1, in situations where the Veteran's Administration determines that a veteran with a service-connected disability would be unable to manage their finances. The Veteran Victims had Firm 1 appointed as their bank account fiduciary for this reason. Firm 1 would receive a set percentage—generally,

approximately 4%—of the benefits for managing the Veteran Victims' finances, paid from the benefits payments that the Veteran Victims received.

8. From on or about June 14, 2010, through on or about December 31, 2024, Defendant was employed at Firm 1. During her first year of employment, she worked at Firm 1 while serving a prison sentence for theft, which permitted her work release from the prison where she was incarcerated.

9. In or around 2015, Defendant was promoted to the position of office manager. In this role, Defendant was responsible for, among other things, managing the Veteran Victims' bank accounts and payments from those accounts. In that capacity, Defendant kept track of the monthly bills Firm 1 paid on behalf of the Veteran Victims. Defendant would draft a check for the monthly bill and then present the check to Victim 1 to sign. Defendant would then update Firm 1's records and mail the check out for payment.

10. Defendant did not have signatory authority on the Veteran Victims' bank accounts. Before any check was issued from an account for which Firm 1 served as fiduciary, including all Veteran Victims' bank accounts, Defendant was required to present the check to Victim 1 for approval and signature.

11. The Veteran Victims had bank accounts at Bank 1, Bank 2, Bank 3, and Bank 4 (collectively the "Banks"). Firm 1 also had a bank account at Bank 1, used to fund pro bono legal services (the "pro bono account"). The Banks were federally insured financial institutions as defined in Title 18, United States Code, Section 20.

12. Company 1 was a financial institution headquartered in the state of South Dakota. Company 1's main payment processing system was also in the state of South Dakota. Company 1 issued credit cards, including a credit card associated with Spirit Airlines, which

allowed users to accumulate "miles" for Spirit Airlines and other benefits, branded as a "Free Spirit" credit card. Defendant had a Company 1-issued Free Spirit credit card, which she used for personal travel and other purposes.

13. Company 2 was a telecommunications company headquartered in the state of Texas. Company 2's payment processing system was distributed across authorized payment locations and retail stores throughout the U.S. Payment made in Ohio to Company 2 caused a signal to be transferred across state lines. Defendant had an account with Company 2 for telecommunications services.

## The Scheme to Defraud

14. Beginning at least in or around February 2018, through in or around December 2024, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant DARLENE K. TOMAN devised and intended to devise a scheme and artifice to defraud the Victims and to obtain money and property from the Victims, including moneys and funds owned by, and under the custody and control of, federally insured financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, to wit: using her access to, and control of, the Victims' bank accounts, to embezzle funds, and, relying on false representations and the concealment of material facts, causing those financial institutions to transmit funds under their custody and control to Defendant and her designees, and otherwise for Defendant's benefit, all by using the Victims' means of identification without lawful authority.

15. Through this scheme, Defendant took advantage of the trust placed in Firm 1, and in turn in her, to help the Veteran Victims. Rather than help the Veteran Victims, Defendant used their identities to steal from their bank accounts, stealing benefits that had been allocated to them, largely benefits intended to help Veteran Victims cover their basic living costs, often while

they lived with disabilities derived from injuries suffered while serving their country in the U.S. Armed Services. Defendant also unlawfully used Victim 1's identity, both to steal from the Veteran Victims and to steal from Firm 1's pro bono account. Defendant stole at least approximately $941,431.72 from the Victims, including at least approximately $864,380.67 stolen from the Veteran Victims and at least approximately $77,051.05 from the pro bono account.

16. It was part of the scheme that:

*Unauthorized Checks Drawn from Veteran Victim Accounts and the Pro Bono Account*

a. Defendant drafted fraudulent checks from Veteran Victim accounts, listing herself as the payee, seeking to convert Veteran Victims' funds to her own use and benefit, without the Veteran Victims' knowledge or permission.

b. Defendant also drafted fraudulent checks from Firm 1's pro bono account, listing herself as the payee, seeking to convert Firm 1's funds to her own use and benefit, without Victim 1's knowledge or permission.

c. Defendant forged Victim 1's signature on the checks, despite having no authority to do so, and without Victim 1's knowledge or permission.

d. Defendant deposited these fraudulent and forged checks into her own bank account, causing the Banks to deposit transfer funds into Defendant's bank account.

e. Defendant converted the funds obtained from the Victims' accounts for her own personal use, including through transfers to other accounts, and direct personal spending. Defendant spent most of the funds gambling on an online casino site.

*Unauthorized Payments from Veteran Victim Accounts for Defendant's Benefit*

f. Defendant also made unauthorized withdrawals and expenditures from Veteran Victim accounts.

g. Defendant, through interstate wire communications, paid her Free Spirit credit card bill directly from Veteran Victim accounts, seeking to convert Veteran Victims' funds to her own use and benefit, without the Veteran Victims' knowledge or permission.

h. Defendant, through interstate wire communications, paid her Company 2 bill directly from Veteran Victim accounts, seeking to convert Veteran Victims' funds to her own use and benefit, without the Veteran Victims' knowledge or permission.

COUNTS 1 – 6
(Bank Fraud, 18 U.S.C. § 1344)

The Grand Jury further charges:

17. The factual allegations contained in Paragraphs 1 through 16 of the Indictment are incorporated by reference as if stated fully herein.

Execution of the Scheme

18. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant DARLENE K. TOMAN, having participated in the foregoing scheme and artifice to obtain money and, funds owned by and under the custody and control of federally insured financial institutions by means of false and fraudulent pretenses, representations, and promises, with intent to defraud, knowingly executed and attempted to execute the scheme to defraud by causing the following Banks to make the following payments to accounts controlled by Defendant, by depositing the following unauthorized checks drawn on the Victim's accounts, each deposit constituting a separate count of this Indictment:

| Count | Date | Description of Execution |
|---|---|---|
| 1 | February 1, 2018 | Defendant deposited a $2,500 check drawn from Firm 1's Bank 1 pro bono account using Victim 1's signature. |

| Count | Date | Description of Execution |
|---|---|---|
| 2 | September 12, 2018 | Defendant deposited a $2,750 check drawn from Victim 2's Bank 1 account, using Victim 1's name and signature and Victim 2's name and account number. |
| 3 | July 7, 2022 | Defendant deposited a $2,630 check drawn from Victim 3's Bank 1 account, using Victim 1's name and signature and Victim 3's name and account number. |
| 4 | August 4, 2022 | Defendant deposited a $2,996.48 check drawn from Victim 4's Bank 1 account, using Victim 1's name and signature and Victim 4's name and account number. |
| 5 | August 15, 2024 | Defendant deposited a $1.500.88 check drawn from Victim 5's Bank 1 account, using Victim 1's name and signature and Victim 5's name and account number. |
| 6 | September 20, 2024 | Defendant deposited a $2,905.24 check drawn from Victim 6's Bank 2 account, using Victim 1's name and signature and Victim 6's name and account number. |

All in violation of Title 18, United States Code, Section 1344.

COUNTS 7 – 12
(Wire Fraud, 18 U.S.C. § 1343)

The Grand Jury further charges:

19. The factual allegations contained in Paragraphs 1 through 16 of this Indictment are incorporated by reference as if stated fully herein.

20. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant DARLENE K. TOMAN, for the purpose of executing the scheme and artifice to defraud described above, and attempting to do so, caused to be transmitted writings, signs, signals, pictures, and sounds by means of wire communications in interstate commerce, as described below, to wit: initiating the following payments from Veteran Victim accounts to Company 1 and Company 2, for Defendant's benefit, by transmissions from the

Northern District of Ohio to servers outside of Ohio, each transmission constituting a separate count of this Indictment:

| Count | Date | Description of Wire Transmission |
|---|---|---|
| 7 | November 4, 2021 | Transmission of $980.27 payment from Victim 4's Bank 1 account to Defendant's Company 1 account. |
| 8 | May 14, 2021 | Transmission of $1,045.47 payment from Victim 4's Bank 1 account to Defendant's Company 2 account. |
| 9 | August 9, 2021 | Transmission of $1,042.68 payment from Victim 4 Bank 1 account to Defendant's Company 2 account. |
| 10 | November 10, 2021 | Transmission of $536.76 payment from Victim 4 Bank 1 account to Defendant's Company 1 account. |
| 11 | January 21, 2022 | Transmission of $1,000 payment from Victim 4 Bank 1 account to Defendant's Company 1 account. |
| 12 | July 7, 2022 | Transmission of $1,386.72 payment from Victim 4 Bank 1 account to Defendant's Company 2 account. |

All in violation of Title 18, United States Code, Section 1343.

COUNTS 13 – 16
(Aggravated Identity Theft, 18 U.S.C. §§ 1028A(a)(1))

The Grand Jury further charges:

21. The factual allegations contained in Counts 3 through 6 of this Indictment are incorporated by reference as if stated fully herein.

22. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant DARLENE K. TOMAN did knowingly transfer, possess, and use a means of identification of another person, without lawful authority, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit: Bank Fraud, in violation of Title 18, United States Code, Section 1344, knowing that the

means of identification belonged to another actual person, as described below, each instance of transfer, possession, or use constituting a separate count of this Indictment:

| Count | Date | Predicate Felony and Use of Means of Identification |
|---|---|---|
| 13 | July 7, 2022 | Defendant deposited a $2,630 check drawn from Victim 3's Bank 1 account, as charged in Count 3, using Victim 1's name and signature and Victim 3's name and account number. |
| 14 | August 4, 2022 | Defendant deposited a $2,996.48 check drawn from Victim 4's Bank 1 account, as charged in Count 4, using Victim 1's name and signature and Victim 4's name and account number. |
| 15 | August 15, 2024 | Defendant deposited a $1.500.88 check drawn from Victim 5's Bank 1 account, as charged in Count 5, using Victim 1's name and signature and Victim 5's name and account number. |
| 16 | September 20, 2024 | Defendant deposited a $2,905.24 check drawn from Victim 6's Bank 2 account, as charged in Count 6, using Victim 1's name and signature and Victim 6's name and account number. |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.